# IN THE COURT OF APPEALS OF IOWA

No. 14-2156
Filed January 13, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DURIUS ANTWAN DAVIS,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, Todd A. Geer,

Judge.


        Durius Davis appeals the district court's decision at resentencing to

reimpose his original sentence for second-degree robbery.    **SENTENCE**

**VACATED AND REMANDED FOR RESENTENCING.**


        Mark C. Smith, State Appellate Defender, and Nan Jennisch, Assistant

Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney

General, for appellee.


        Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**POTTERFIELD, Presiding Judge.**

Durius Davis appeals the district court's decision at resentencing to reimpose his original sentence for second-degree robbery. Davis makes three arguments. First, he argues the district court failed to apply the *Miller* factors, which must be taken into consideration before sentencing a juvenile to a minimum term of imprisonment. Second, he argues the district court improperly considered the fact that his plea deal reduced his criminal charge from first-degree robbery to second-degree robbery. Third, he argues the district court failed to apply the new juvenile-sentencing scheme under Iowa Code section 901.5(14) (2013) that allows for reduced penalties in all juvenile cases except for those involving class "A" felonies. We agree the district court failed to apply the factors first set forth in *Miller v. Alabama*, 132 S.Ct. 2455, 2468 (2012), which have been adopted in Iowa by our supreme court. *See State v. Lyle*, 854 N.W.2d 378, 404 n.10 (Iowa 2014). We therefore vacate Davis's sentence and remand this matter for resentencing before a different judge.

## I. Background Facts and Proceedings

On July 9, 2009, the State filed a trial information charging Davis with first-degree robbery, a class "B" felony, in violation of Iowa Code sections 711.1 and 711.2 (2009). Davis was sixteen years old at the time of the offense. Instead of proceeding to trial on the first-degree robbery charge, Davis chose to plead guilty to the lesser-included offense of second-degree robbery, a class "C" felony, in violation of Iowa Code sections 711.1 and 711.3. The guilty plea, entered on January 5, 2011, was presented as an *Alford* plea, which allows a criminal defendant to plead guilty without admitting guilt. *See North Carolina v. Alford*,

400 U.S. 25, 37-39 (1970).  Davis was sentenced the same day to a term of imprisonment not to exceed ten years, with a mandatory minimum sentence of seven years, along with a suspended fine of $1000.

A point of contention at sentencing was whether Davis' sentence on the robbery charge would run concurrently or consecutively with another sentence he was already serving on an unrelated willful injury charge.  In explaining its decision to impose concurrent, rather than consecutive, sentences, the district court stated in relevant part:

> THE COURT: [The prosecutor] also makes a really good point of the fact that you can't consider this in isolation, this robbery.  You have to consider it in the context of other criminal activity that you were involved with at the time.  And I'm very familiar with the willful injury case.  We tried that case.
> . . . .
> But I also take a look at the period of your life, how young you were when these things occurred.  I also consider the sentence that if I don't run these consecutively that you're still going to be ordered to serve here in this case.  There is a ten-year sentence with a 70 percent minimum that is applicable.  I know there is a five-year minimum sentence applicable for the willful injury that I've already imposed upon you.  The question I need to resolve here is whether it's necessary for your rehabilitation and for the protection of the community and the other factors that I consider in determining an appropriate sentence, whether it's necessary that those be stacked one on top of another.  And I am determining, although it is a very close case, I'm determining that they're going to run concurrently, and primarily because I am hopeful that you're going to get the point, that you're going to use the time that you're going to spend in prison . . . to decide that, you know, this isn't how I want to live the rest of my life.

As the court noted, running the sentences concurrently did not change the fact that Davis would have to serve the seven-year mandatory minimum applicable to his sentence for second-degree robbery.

Then, in the years following the imposition of Davis's sentence, a series of court cases called into question the legality of mandatory minimum sentences for juvenile offenders. First, in 2012, the United States Supreme Court decided *Miller*, 132 S.Ct. at 2475, in which it held that the Eighth Amendment's prohibition of cruel and unusual punishment forbids mandatory sentences of life in prison without parole for juvenile offenders. *Miller* was followed in this state by a trilogy of Iowa Supreme Court decisions issued on the same date in 2013: *State v. Null*, 836 N.W.2d 14, 70-71 (Iowa 2013), which held that the reasoning of *Miller* would apply not just to mandatory life sentences without parole but also to circumstances in which a juvenile offender's lengthy mandatory minimum sentences effectively amounted to a lifetime or near-lifetime sentence without parole; *State v. Pearson*, 836 N.W.2d 88, 96 (Iowa 2013), which held that the reasoning of *Miller* would similarly apply to a combined thirty-five year minimum sentence without parole; and *State v. Ragland*, 836 N.W.2d 107, 117 (Iowa 2013), which held that the rule contemplated by *Miller* would apply retroactively. Finally, on July 18, 2014, the Iowa Supreme Court decided *State v. Lyle*, 854 N.W.2d 378, 400-04 (Iowa 2014), which held that the Iowa Constitution's prohibition of cruel and unusual punishment requires individualized sentencing for the application of statutory mandatory minimum sentences for juvenile offenders. Six days after *Lyle* was decided, on July 24, 2014, Davis filed a motion to correct an illegal sentence.

Davis was resentenced on December 8, 2014. No witnesses were presented. An updated PSI was prepared and provided to the court and counsel. After hearing statements from the Assistant County Attorney, from defense

counsel, and from Davis himself, the district court had the following to say about its decision to reimpose the original sentence:

> Well, Mr. Davis, I take my responsibilities in these proceedings, and we're seeing a number of situations like yours in light of the appellate court cases which have recently come down, and I had one of these hearings just last week, and I eliminated the mandatory minimum sentence in that case for a youthful offender. I am familiar with the criteria we need to look at in making resentencing decisions, and I've reviewed all of that as it applies to you and your situation. And you really haven't done near as well rehabilitating yourself as the individual that I resentenced last week.
>
> And, also, you bring with you a little bit different situation. That was a second-degree robbery also, but the underlying circumstances of the offense were more mitigating in his situation. Yours, yours are more aggravating. His was also pled down from a first degree robbery to a second-degree robbery. In your case, also, the danger that you posed at that time to the community was very great, particularly in light of the fact that you had the very serious willful injury, the shooting incident as well as another very violent offence with a robbery in the second degree.
>
> You bargained for the sentence, the opportunity to plead to a lesser charge, the robbery second, and you bargained for the ten-year sentence being run at the same time as the willful injury. I sentenced you on that case, and I provided that this run at the same time as the willful injury case. And one of the reasons that I did that was because of your age. I took that into consideration when I sentenced you the first time around. I took a lot of the same things then that I'm taking into consideration right now: prospects of you rehabilitation, your history, your character, your needs and the needs of society.
>
> I do recognize that you were a young individual at the time you committed this offense, but I take a look at your juvenile court history. You were under juvenile court supervision for a number of years, and there were a lot of good people spending a lot of time with you trying to get you to figure things out and trying to rehabilitate you and help you out and get you to understand that you don't want to live your life that way. So it's not like this was the first offense, your first brush with things, and it's not like this was your first opportunity to have people work with you and try to get you to figure out how to be productive and law abiding and someone who's not a danger to this community, and yet you chose to go a different direction.
>
> The disciplinary reports, also, that you've received while in jail and while in prison are significant, because you had every opportunity to demonstrate, and every incentive to demonstrate that

you're capable of being able to comply with the rules and regulations. When you're out and about in society, you have to do the same thing. You have to demonstrate that you're capable of abiding by rules and regulations, and you're not showing us here that you're ready to do that.

There are some encouraging things that you've accomplished since you've been in prison. You've obtained your GED. You're employed, you're working, and you still have that job, so that tells me that you're being responsible about the job that you were doing. And you've also completed some of the requirements of special services that have been afforded to you, so that works in your favor. And I've considered that. And I've considered your disability, also. I'm aware of that condition. I was aware of that a number of years ago, also, when I sentenced you.

Upon consideration of all those factors, I remain convinced that the sentence which was originally imposed is an appropriate sentence, notwithstanding the fact that you committed this offense while you were a juvenile, but for the reasons I have set forth here today, I continue to be convinced that the sentence originally imposed is an appropriate sentence, and your motion to have me not impose the 70 percent minimum on the ten-year sentence is accordingly overruled.

Davis now appeals.

## II. Standard of Review

As a general rule, we review a district court's sentencing decisions for an abuse of discretion. *See State v. Formaro*, 638 N.W.2d 720, 724–25 (Iowa 2002). However, when the defendant challenges the constitutionality of a sentence, our review is de novo. *State v. Seats*, 865 N.W.2d 545, 553 (Iowa 2015).

## III. Analysis

The Iowa Supreme Court did not hold in *Lyle* that district courts are prohibited in all cases from imposing minimum sentences for juvenile offenders. It merely held that a district court must "at least consider a sentencing option other than mandatory minimum imprisonment," taking into account youth and its

attendant circumstances as a mitigating factor. *Lyle*, 854 N.W.2d at 403–04. The *Lyle* court was extremely specific about the procedures a district court must follow on resentencing in a case just like the one now before us:

> To avoid any uncertainty about the parameters of the resentencing hearing and the role of the district court on resentencing, we reiterate that the specific constitutional challenge raised on appeal and addressed in this opinion concerns the statutory imposition of a minimum period of incarceration without parole equal to seventy percent of the mandatory sentence. The holding in this case does not address the mandatory sentence of incarceration imposed under the statutory sentencing schema or any other issues relating to the sentencing schema. Under article I, section 17 of the Iowa Constitution, the portion of the statutory sentencing schema requiring a juvenile to serve seventy percent of the period of incarceration before parole eligibility may not be imposed without a prior determination by the district court that the minimum period of incarceration without parole is warranted under the factors identified in *Miller* and further explained in *Null.* The factors to be used by the district court to make this determination on resentencing include: (1) the age of the offender and the features of youthful behavior, such as "immaturity, impetuosity, and failure to appreciate risks and consequences"; (2) the particular "family and home environment" that surround the youth; (3) the circumstances of the particular crime and all circumstances relating to youth that may have played a role in the commission of the crime; (4) the challenges for youthful offenders in navigating through the criminal process; and (5) the possibility of rehabilitation and the capacity for change. *See Miller*, 567 U.S. at __ , 132 S. Ct. at 2468, 183 L. Ed. 2d at 424; *Null*, 836 N.W.2d at 74–75; *see also Pearson*, 836 N.W.2d at 95–96; *Ragland*, 836 N.W.2d at 115 n.6.
>
> In order to address the issue raised in this appeal, the district court shall conduct a hearing in the presence of the defendant and decide, after considering all the relevant factors and facts of the case, whether or not the seventy percent mandatory minimum period of incarceration without parole is warranted as a term of sentencing in the case. If the mandatory minimum sentence is not warranted, the district court shall resentence the defendant by imposing a condition that the defendant be eligible for parole. If the mandatory minimum period of incarceration is warranted, the district court shall impose the sentence provided for under the statute, as previously imposed.

*Id.* at 404 n.10.

*Lyle* serves as clear instruction both that a district court must consider at least all of the enumerated factors prior to reimposing a minimum period of incarceration upon a juvenile offender, and that the factors are to be considered as mitigating factors only. *See State v. Hajtic*, No. 15-0404, 2015 WL 6508691, at *2 (Iowa Ct. App. Oct. 28, 2015). Failure to consider even a single of the factors merits reversal. *Id.* ("First, the district court failed to consider the fourth factor ('the challenges for youthful offenders in navigating through the criminal process') during the sentencing hearing. This was error and requires reversal."). So too does improper use of any of the enumerated factors as aggravating, rather than mitigating, factors. *Id.* ("Second, the district court impermissibly treated at least one of the other factors as an aggravating circumstance rather than a mitigating circumstance. . . . It is clear the court considered [the defendant's] advanced age as an aggravating factor. Controlling case law provides this was error.").

In this case, while the court's assurance to Davis that it was "familiar with the criteria we need to look at in making resentencing decisions, and [had] reviewed all of that as it applies to [Davis] and [his] situation," may have been meant to convey that it had engaged in off-the-record contemplation of each of the enumerated factors, such generality is not sufficient under *Lyle*. 854 N.W.2d at 402 n.8. *See also Null*, 836 N.W.2d at 74 (explaining that *Miller* requires "more than a generalized notion of taking age into consideration as a factor in sentencing"). The district court did generally consider the fact that Davis was a juvenile when the crime occurred as a mitigating factor, but that only goes to the

first factor ("the age of the offender and the features of youthful behavior, such as 'immaturity, impetuosity, and failure to appreciate risks and consequences'").

The district court failed to mention explicitly the second factor ("the particular 'family and home environment' that surround the youth"), except to acknowledge his learning disability resulting from a childhood accident. The updated PSI provided to the court included relevant information that could have been considered as mitigating. Davis's father, who had thirteen children, was largely absent from his life. In his father's absence, Davis was raised by his mother and a brother. His mother had four children besides Davis and had multiple personal issues—arrests for forgery and drug possession, a history of crack cocaine abuse, and mental health problems—that put all five children in danger of abuse. The brother who primarily cared for Davis had arrests for drug possession and delivery, domestic abuse, interference with official acts, and driving while barred. The district court made no mention of Davis's negative family and home environment. Nor was this information raised by either counsel at the resentencing.

The district court also failed to properly consider the third factor ("the circumstances of the particular crime and all circumstances relating to youth that may have played a role in the commission of the crime"). The court merely stated that the circumstances of Davis's robbery were "more aggravating" than those of another juvenile offender's robbery. It failed to address what part, if any, Davis's youth played in his commission of the crime. For example, although the robbery was committed by three individuals, the court did not consider that Davis participated as a result of his youthful susceptibility to peer pressure despite case

law suggesting that peer pressure is precisely the type of youthful circumstance that should be taken into account. *See Lyle*, 854 N.W.2d at 402 n.8 (citing an alternate phrasing of the third factor from *Ragland*, which explicitly listed "the way familial and peer pressures may have affected [the youth]" as a necessary consideration); *Null*, 836 N.W.2d at 61 (discussing the United States Supreme Court's statement that youth "are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure").

The district court considered the fourth factor ("the challenges for youthful offenders in navigating through the criminal process") by describing Davis's lengthy experience in juvenile court and the services provided to him there. The court also described Davis's past experience in the juvenile justice system in suggesting that Davis failed to successfully navigate himself out of the criminal justice system at an earlier point. But nowhere did it acknowledge as a mitigating factor that Davis's youthfulness may have affected his experience with the criminal justice system, except to discuss the context in which the robbery occurred, which included another violent crime committed in the same time frame.

Finally, while we make no judgement as to the sufficiency of the district court's consideration of the fifth factor ("the possibility of rehabilitation and the capacity for change") given that our findings regarding the second, third, and fourth factors already require reversal, we do feel compelled to highlight the potential catch-22 that a district court faces at a resentencing hearing such as this one. When a district court resentences a criminal defendant after the passage of time has revealed a negative response to an opportunity for

rehabilitation, it seems a logical impossibility to both accurately describe what has actually transpired and also address the young defendant as a juvenile with an unknown but mitigating capacity for change. Here, the district court considered the possibility of rehabilitation as a mitigating factor at Davis's original sentencing hearing. Then, at resentencing, the district court went into some detail regarding Davis's prospects of rehabilitation based upon what had actually occurred to date. It noted his positive accomplishments while in prison—obtaining a GED and remaining employed—as mitigating factors. However, it also seems to have viewed negative aspects of Davis's rehabilitative efforts since sentencing—reports of disciplinary problems while in jail and prison—as aggravating factors militating against a more lenient sentence. To the extent that *Lyle* and other controlling case law requires a judge to consider the abstract possibility of rehabilitation as a mitigating factor without allowing for consideration of actual historical events, the juvenile resentencing process established in *Lyle* would seem to require optimism that may no longer be realistic or appropriate years after the initial sentence was imposed.

On our de novo review, we find the district court failed to consider all of the mitigating factors enumerated in *Lyle*. The explicit and detailed resentencing procedures of *Lyle* do not allow a district court to satisfy its duties on resentencing with only a generalized discussion of the mitigating factors of the circumstances of the crime and the effects of immaturity on the defendant's actions. We are thus compelled to vacate Davis's sentence and remand this matter for resentencing before a different judge.

Having already determined that Davis's sentence must be vacated and remanded to the district court for resentencing, we need not address Davis's remaining arguments.

**SENTENCE VACATED AND REMANDED FOR RESENTENCING.**